In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00272-CV**
_____

**MELBA JAMES, Appellant**

**V.**

**ANCHOR BOATLIFTS LLC AND JASON MILLER, Appellees**

_____

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-08-11463-CV**

_____

**MEMORANDUM OPINION**

In a dispute involving the construction of a bulkhead on her lakefront property, Melba James[1] ("James" or "Plaintiff" or "Appellant") appeals the trial court's Final Judgment granting Anchor Boatlifts LLC's ("Anchor Boatlifts") and Jason Miller's ("Miller") (collectively "Defendants" or "Cross-Appellants") Motion for Traditional and No-Evidence Summary Judgment, and the Defendants filed a

_____

[1] According to the appellate record, Melba James was formerly known as Melba Johnston.

1

cross-appeal from the trial court's Final Judgment denying Defendants their attorney's fees. We affirm the trial court's judgment.

Background

On August 19, 2021, James filed Plaintiff's Original Petition (the "Petition") against Anchor Boatlifts and its registered agent Jason Miller.[2] According to the Petition, James hired the Defendants to replace her bulkhead at her property in Montgomery, Texas in 2017. James alleges that she hired the Defendants based on their representations to her that they were highly experienced with bulkhead construction and replacements and that the work done by the Defendants to repair the bulkhead would be a long-term repair. The Petition alleges that "[i]n less than three years, the bulkhead work Defendants competed failed and required immediate replacement." According to the Petition, the Defendants failed to construct adequate bracing, drainage, or walls for the bulkhead, and because the bulkhead could not support the weight it was intended for, James incurred additional cost to tear down and replace the Defendants' inadequately constructed bulkhead. James alleges that inspections determined that the Defendants used insufficient materials, engineering, and drainage for the project, and multiple pilings were on the verge of collapse. James asserts claims for breach of contract, violations of the Texas Deceptive Trade

---

[2] The record reflects that at the time James filed her Petition, she no longer owned the property where the bulkhead was built. James sold the property and the bulkhead in November of 2020.

2

Practices Act ("DTPA"), breach of warranty, and common law fraud. James alleges that Anchor Boatlifts is liable for Miller's acts and omissions under agency and respondeat superior theories. In her Petition, James seeks actual damages, exemplary damages, costs, attorney's fees, pre- and post-judgment interest, and any other relief to which she may be entitled by law.

The Defendants filed an Answer, generally denying James' claims. The Defendants also asserted the following affirmative defenses: James' own actions and omissions caused or contributed to her damages; James' claims are not actionable under the DTPA as the facts and circumstances pled amount to nothing more than an alleged breach of contract; Defendants' statements as alleged were merely opinion or puffery and are not actionable under that DTPA; and James' claims are barred in whole or in part by the applicable statutes of limitations. The Defendants also filed a cross-claim to recover "all reasonable attorney's fees and costs necessary to defend against the groundless DTPA allegations" pursuant to section 17.50(c) of the Texas Business and Commerce Code.

Defendants filed a Traditional and No-Evidence Motion for Summary Judgment arguing, among other things,[3] that it is undisputed that the Defendants

---

[3] Because we conclude the claims are barred by the applicable statutes of limitations, we limit our discussion of the Defendants' summary judgment motion and the responsive pleadings to the arguments made regarding the statutes of limitations. *See* Tex. R. App. P. 47.1.

completed the bulkhead work on James' property (referred to by Defendants as the "Project") more than four years before her lawsuit was filed. The Defendants allege in the summary judgment motion that claims for any tort actions for property damage and DTPA actions are subject to a two-year statute of limitations, and claims for breach of contract, breach of warranty, and fraud are subject to a four-year statute of limitations. The Defendants assert that James' claims are barred because she failed to file her lawsuit before the applicable statutes of limitations lapsed:

> [] All of Plaintiff's causes of action began to accrue no later than the date when Defendant completed work on the Project on April 5, 2017, because the work and its quality was open and obvious. The contract, Ex. A, for the Project was for Defendant to remove the pre-existing structure and construct a new Bulkhead in exchange for payment. The Project was completed, and Plaintiff approved of the work and made the final payment on April 5, 2017. Ex. C; Ex. F. Further, each of the representations upon which Plaintiff makes her fraud and DTPA claims were made prior to April 5, 2017. The statute of limitations for her DTPA claim would have lapsed on April 5, 2019, and the statutes of limitations would have lapsed on April 5, 2021, for all her other claims. Since Plaintiff failed to file her lawsuit before the applicable statutes of limitations lapsed, instead waiting until August 19, 2021, to file suit, all of Plaintiff's claims are barred by the statu[t]es of limitations. Accordingly, Defendants have shown conclusive proof that they are entitled to summary judgment on their limitations defense for all the claims asserted in Plaintiff's Original Petition, and they should be dismissed from this suit.

The Defendants' exhibits in support of their summary judgment motion, included Exhibit A (a copy of the Anchor Boatlifts estimate for work, signed by James as "accepted" on May 23, 2016), Exhibit C (a copy of the April 5, 2017 final payment

4

and receipt for the work done by Anchor Boatlifts), and Exhibit F (Affidavit of Miller).

James filed Plaintiff's Response to Defendants' Traditional and No-Evidence Motion for Summary Judgment and Objections to Defendants' Summary Judgment Evidence (the "Response"). In the Response, James alleges that the defects in the Defendants' repairs to the bulkhead "first arose and were first discovered when Plaintiff listed her home for sale in mid-2020[]" and she argued "Plaintiff lost the first contract to sell the Property due to the shoddy bulkhead [and] she had to give the buyers that purchased the Property a $45,000 concession to close the sale of the house." James stated in the Response that the commencement of limitations accrues on the date a defendant's wrongful act causes some legal injury, James did not suffer an injury until the bulkhead failed in 2020, Defendants have not submitted any evidence to suggest Plaintiff was injured prior to 2020, and James filed suit within the statute of limitations for all claims asserted in her Petition. In her affidavit attached to her Response, James states that in 2020 "it was apparent that there were multiple cracks in the bulkhead and several piling[]s/beams were bowing significantly[,]" and that "[i]n mid-2020 . . . [a] potential buyer alerted [James] to the extensive damage to the bulkhead[]" and she "notified Mr. Miller of the damage by text in mid-2020."

5

Defendants filed Objections to Plaintiff's Summary Judgment Evidence and Response to Plaintiff's Objections. Defendants also filed a Reply in Support of their Motion for Summary Judgment, asserting that in James' lawsuit filed on August 19, 2021, "Plaintiff did not plead the discovery rule or fraudulent concealment[.]" The Defendants contend that the assertion in James' Response that her cause of action only began to accrue when the "bulkhead failed, which did not happen until 2020[,]" indicates that she has misinterpreted accrual to occur when she first realized damages, but the accrual of the cause of action is not tied to the discovery of damages. Defendants argued that "[t]he discovery rule is a limited exception to the general rule of accrual[]" and "[a] party seeking to avail itself of the discovery rule must affirmatively plead it." The Defendants explained that James "is not entitled to avail herself of the discovery rule as a matter of law because (1) she never pled it; and (2) none of her alleged damages were inherently undiscoverable." The Defendants argued in the trial court that because James failed to plead the discovery rule, she waived the right to assert it, and even if she had properly pleaded the discovery rule, James has provided no evidence that her alleged injuries were inherently undiscoverable. According to the Defendants, in James' affidavit that she attached to her Response, she states she first became aware of the alleged damage when "[a] potential buyer alerted [James] to the extensive damage to the bulkhead[]" and although that affidavit was intended to bolster her unpled assertion that she is

6

entitled to delayed accrual of her claims, it demonstrates her lack of diligence in discovering and asserting her claims.

On May 30, 2022, the trial court signed an Order Granting Defendants' Traditional and No-Evidence Summary Judgment and dismissed James' causes of action against the Defendants with prejudice. James appealed. In the appeal from the trial court's May 30, 2022 Order, we concluded that order was not a final appealable order because it did not include clear and unequivocal language of finality and did not address Defendants' counterclaim for attorney's fees, and we dismissed the appeal for lack of jurisdiction. *See James v. Anchor Boatlifts LLC*, No. 09-22-00208-CV, 2024 Tex. App. LEXIS 4288, at \*\*2-3 (Tex. App.—Beaumont June 20, 2024, no pet.) (mem. op.).

After the matter was returned to the trial court, the trial court set the case for a bench trial on Defendants' counterclaim for attorney's fees. James filed a Rule 166(g) motion with the trial court, asking the trial court to determine that the Defendants' claim for attorney's fees under the DTPA fails as a matter of law because they have failed to prove that James' claim under the DTPA is groundless, brought in bad faith, or brought to harass the Defendants. *See* Tex. R. Civ. P. 166(g) (authorizing a pre-trial conference "to assist in the disposition of the case without undue expense or burden to the parties," and providing that the trial court may consider "[t]he identification of legal matters to be ruled on or decided by the

7

court[]"). The parties filed responsive pleadings and briefing pertaining to the Defendants' counterclaim for attorney's fees.

At the bench trial on Defendants' counterclaim for attorney's fees, the trial court heard arguments and received evidence pertaining to the counterclaim for attorney's fees under the DTPA. Jason Miller testified that he entered into an agreement with James to construct James' bulkhead in 2016, and that she paid him in full and the construction was completed on April 5, 2017. Miller submitted evidence including copies of the contract between Miller and James, copies of checks for payments made by James, and copies of receipts for the payments. Miller testified that any representations he would have made to James about the bulkhead work and the warranty, would have been made prior to April 5, 2017.

Miller testified that Anchor Boatlifts provided a one-year warranty on the bulkhead, and James did not make any warranty claims within the warranty period. On cross-examination, Miller agreed that a text string which had been admitted into evidence showed that on July 11, 2020, Miller told James that the bulkhead work only had a one-year warranty and that James believed Miller told her the bulkhead would "outlast" James and Miller. Miller testified that he never told James that the bulkhead would "outlast" James and Miller. Miller agreed that all terms and conditions regarding his agreement with James were included in the contract, but Miller agreed that the one-year warranty did not appear in the contract "[i]n black

8

and white[,]" and that no other document indicated that the warranty was only for one year. Miller acknowledged that there is no "warranty document[]" that he provides to his customers setting forth the terms and conditions of the warranty he provides to his customers. According to Miller, he told James about the one-year warranty on craftsmanship when they discussed the scope of the project and before she entered into the contract with Miller. Miller agreed that his wife sent James an email in July of 2020 that stated that Miller's wife had spoken to Miller about James' concern about the "bowing piling[,]" and that Miller's wife stated that "[w]hile the piling is bowing it is not cracked or split and shows no real concerns at this time[,]" and the email explained to James about additional work that Anchor Boatlifts could do if she was concerned with the bowed piling. The email was admitted into evidence. Miller recalled that Anchor Boatlifts had not done any construction, maintenance, or any other additional work on the bulkhead since the construction was completed in April of 2017, and that James did not hire Anchor Boatlifts to do any additional work that is commonly needed for bulkheads, and any additional work would have been at an additional cost. Miller testified that the last time a representative from Anchor Boatlifts went to James' property to examine the bulkhead was April of 2022, and at that time, the bulkhead Miller had constructed in 2017 was still in place.

9

The defense also read excerpts from James' deposition into the record at the bench trial. James stated in her deposition that she sold her property in November of 2020. James agreed in her deposition that the work was complete and she paid for the work on the bulkhead in April of 2017. James stated in her deposition that it was about eighteen months after Miller finished the bulkhead, when a new neighbor alerted James that the bulkhead was "cracked" or "bowed." James also stated in her deposition that she did not recall Miller discussing with her a warranty period when they entered into the agreement. James stated in her deposition that she sold the house in November of 2020 and had never paid to have repairs done on the bulkhead since it was completed in April of 2017. The trial court also heard defense counsel testify about the amount of reasonable and necessary attorney's fees incurred by the Defendants in defending James' DTPA claims.

During the bench trial, the trial court granted James' motion for a directed verdict on the Defendants' claim for attorney's fees. On July 23, 2024, the trial court signed a Final Judgment stating the following:

> On this day the Court considered whether Defendants are entitled to attorney[']s fees for defeating Plaintiff's claims in Defendants' Hybrid Motion for Summary Judgment previously Granted by the Court on May 30, 2022. Specifically, the Court determined whether Defendants were entitled to attorney[']s fees for defeating Plaintiff's DTPA cause of action. Although the Court stands by its Granting the Defendants' Hybrid Motion for Summary Judgment, the Court finds Plaintiff's claims were not groundless nor brought in bad faith.
> It is, therefore, ORDERED Defendants take nothing on their claim for attorney[']s fees against Plaintiff.

10

This Order, combined with the previous ruling on Defendants'
MSJ, is final, disposing of all claims and parties, and is appealable.
Any relief not referenced herein is denied.

James filed a notice of appeal from the trial court's grant of the Defendants' motion for summary judgment, and the Defendants cross-appealed from the trial court's take-nothing judgment on Defendants' counterclaim for attorney's fees.

## Plaintiff's Appeal of the Summary Judgment

In one issue, James argues the trial court erred in granting Appellees' summary judgment and dismissing James' claims. According to James, a traditional summary judgment was not proper because Appellees did not properly submit a verified denial that Anchor Boatlifts is an improper party and because James' claims against Appellees are not barred by applicable statutes of limitations. James argues her causes of action accrued when the bulkhead failed in 2020 and she states that she filed suit a little over a year after the bulkhead failed, and within the statutes of limitations. James contends that a no-evidence summary judgment was not proper because James presented the trial court with sufficient evidence to support each of the elements of her claims for breach of contract, breach of warranty, deceptive trade practices, and fraud.

The Defendants argue on appeal that the trial court properly granted their Traditional and No-Evidence Motion for Summary Judgment and dismissed James' claims because she failed to timely file suit, she provided no evidence of specifically

11

stated essential elements of each of her claims, including but not limited to damages. Defendants contend that there is no evidence that Anchor Boatlifts is liable to James because James had no dealings with Anchor Boatlifts, which was not even formed as a legal entity until just prior to when James filed her suit. As to James' argument that her causes of action accrued when the bulkhead failed in 2020, Defendants argue that "Appellant misconstrues the meaning of 'accrual' and incorrectly claims that accrual occurs on the date when Appellant first realized her damages, rather than the date upon which Appellees' allegedly actionable conduct occurred."

In her Reply Brief, James concedes that she did not plead the discovery rule, and she argues that "there was no need for her to plead the discovery rule[]" because "[s]he is not claiming that the discovery rule offers her a defense to the statute of limitations." Instead, James argues that her position has always been that she did not have a cause of action until she suffered injury in 2020 when the bulkhead failed.

Standard of Review and<br>Applicable Law Pertaining to Summary Judgments

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). A defendant can obtain a summary judgment by negating one or more elements of each theory of recovery, by establishing all elements of each theory of recovery, or by establishing all elements of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). We take as true all evidence favorable to the non-movant, indulge every

12

reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for a traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

When a party moves for both a traditional and no-evidence summary judgment, we first consider the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant fails to meet his burden under the no-evidence motion, there is no need to address the challenge to the traditional motion because it necessarily fails. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

A no-evidence motion for summary judgment is essentially a pretrial motion for directed verdict, which we review for legal sufficiency. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Once a no-evidence motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements identified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The nonmoving party must produce summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i); *see Mack Trucks*, 206 S.W.3d at 582. A trial court must grant a no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of

evidence raising a genuine issue of material fact as to the challenged elements. Tex. R. Civ. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). If the evidence rises to a level that would allow reasonable and fair-minded people to differ in their conclusions, then more than a scintilla of probative evidence exists. *King Ranch*, 118 S.W.3d at 751. "The evidence does not create an issue of material fact if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). In evaluating whether more than a scintilla of evidence exists, we must view the evidence in the light most favorable to the nonmovant. *Ford Motor Co.*, 135 S.W.3d at 601.

The burden of pleading and proving the defense as a matter of law such that there is no genuine issue of material fact is on the party asserting an affirmative defense. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *see also* Tex. R. Civ. P. 94. "A defendant is entitled to summary judgment on the affirmative defense of limitations if it conclusively establishes all necessary elements of that affirmative defense." *Goad v. KHBM Partners III, Ltd.*, No. 09-20-00020-CV, 2021 Tex. App. LEXIS 8156, at *13 (Tex. App.—Beaumont Oct. 7, 2021, no pet.) (mem. op.) (citing *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997); *Thomas v. Omar Invs., Inc.*, 129 S.W.3d 290, 293 (Tex. App.—Dallas 2004, no

14

pet.)). Only if the record shows that the defendant conclusively proved all elements of the affirmative defense as a matter of law will the summary judgment be affirmed. *Id.* (citing *Thomas*, 129 S.W.3d at 293).

A summary judgment movant on limitations bears the burden to "(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant does this, the nonmovant must adduce evidence raising a fact issue in avoidance of limitations. *Id.*

Claims for breach of contract and breach of warranty are subject to a four-year statute of limitations. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203 (Tex. 2011) (breach of contract); *Hyundai Motor Co. v. Rodriguez ex. rel. Rodriguez*, 995 S.W.2d 661, 668 (Tex. 1999) (breach of warranty). The statute of limitations for fraud in Texas is four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.004. The statute of limitations for DTPA claims is two years after the day the cause of action accrues. Tex. Bus. & Com. Code Ann. § 17.565.

15

The statute of limitations period on a cause of action begins to run when the cause of action "accrues." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Determining if a statute of limitations bars a claim usually presents a question of law for the reviewing court. *Id.* Generally, a cause of action accrues and the statute of limitations begins to run, when an allegedly wrongful act causes a legal injury, regardless of when the legal injury is discovered or when all of the resulting damage occurs. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). However, where the legal injury is one which is inherently impossible to discover, the discovery rule may apply. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977). In cases where the discovery rule applies, the cause of action does not accrue, and the limitations period does not begin to run until the plaintiff knows, or after exercising reasonable diligence, should have known of the facts giving rise to a cause of action. *See HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

That said, a plaintiff must plead the discovery rule before it has applicability. *See Sanders v. Constr. Equity, Inc.*, 42 S.W.3d 364, 368 (Tex. App.—Beaumont 2001, pet. denied) (citing *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Hall v. Stephenson*, 919 S.W.2d 454, 468 (Tex. App.—Fort Worth 1996, writ denied)). "A party seeking to avail itself of the discovery rule must [] plead the rule, either in its original petition or in an amended or supplemental petition in response

16

to defendant's assertion of the [statute of limitations] defense as a matter in avoidance." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) (citing Tex. R. Civ. P. 94; *Wise v. Anderson*, 359 S.W.2d 876 (1962); *Sherman v. Sipper*, 152 S.W.2d 319, 321 (1941); *Liles v. Phillips*, 677 S.W.2d 802, 808-09 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.)); *Pitman v. Lightfoot*, 937 S.W.2d 496, 509-10 (Tex. App.—San Antonio 1996, writ denied). A defendant's motion for summary judgment based on limitations need not negate the discovery rule unless the plaintiff has pleaded it. *See In re Est. of Matejek*, 960 S.W.2d 650, 651 (Tex. 1997) (per curiam); *Woods*, 769 S.W.2d at 517-18; *see also SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995) ("A defendant need not . . . show that the plaintiff cannot succeed on any theory conceivable in order to obtain summary judgment; he is only required to meet the plaintiff's case as pleaded.") (internal quotations omitted).

Analysis

It is undisputed that Miller completed the work to the bulkhead on James' property in April of 2017, and James did not file her Petition until August 19, 2021. The Defendants asserted the defense of limitations in their Answer and in their summary judgment motion, and they argued that James cannot rely on the discovery rule to extend the accrual of the respective two and four-year statutes of limitations because she never pleaded nor argued that it applied. James agrees that she did not

17

plead the discovery rule, and she agrees that the discovery rule has no application in this case. She states

> She is not claiming that the discovery rule offers her a defense to the statute of limitations. It is, and always has been, Ms. James' position that she did not have a cause of action in April of 2017. There would be no reason for her to file a lawsuit in April of 2017. She had no damages. Her bulkhead had not failed. She had no injury.

James argues on appeal that she did not have a "legal injury" until the bulkhead failed, but she does not state when the failure occurred. In the Defendants' Summary Judgment Motion, the Defendants argued several reasons why the Defendants were entitled to a summary judgment on each cause of action, including that each of the claims is barred by the two- and four-year statutes of limitations.

Breach of Contract

As for James' breach of contract claim, she alleged in her Petition that the Defendants "breached the contract by failing to complete the job as promised, by failing to construct a bulkhead with the correct materials, engineering, and drainage for the project, and failing to provide a level of workmanship equivalent to or exceeding the acceptable industry standard for each aspect of the scope of work." A breach of contract claim accrues when the contract is breached. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). Even assuming James' allegations about the alleged breach of contract are true, we conclude that the injury for the alleged breach of contract accrued when the bulkhead was completed in April of 2017, which is

18

more than four years before James filed suit, so this claim is barred by the applicable four-year statute of limitations. *See Exxon Corp.*, 348 S.W.3d at 203.

## Breach of Warranty

James alleged in her Petition that the Defendants warranted that they would complete the work on her property and it would meet or exceed industry standards and that they breached their warranties by failing to provide "quality work." An action for breach of warranty accrues when the breach occurs. *Schneider v. Lipscomb Cnty. Nat'l Farm Loan Ass'n*, 196 S.W.2d 954, 957 (Tex. App.—Amarillo 1946), *rev'd on other grounds*, 202 S.W.2d 832, 834 (Tex. 1947). We conclude that the alleged claim for breach of warranty would have accrued when the bulkhead construction was completed in April of 2017, which is more than four years before James filed suit, so this claim is also barred by the applicable four-year statute of limitations. *See Hyundai Motor Co.*, 995 S.W.2d at 668.

## DTPA Claims

In James' Petition, she also alleged the Defendants violated the DTPA. The DTPA claims are governed by a two-year statute of limitations. Tex. Bus. & Com. Code Ann. § 17.565. James does not rely on the discovery rule incorporated in the statute and she states she "is not asserting the discovery rule, as it is inapplicable in this case[,]" and she "is not claiming that the discovery rule offers her a defense to the statute of limitations." Under the circumstances, even though the DTPA may

incorporate the discovery rule in the statute, the Defendants were not required to negate the discovery rule because James did not plead or otherwise raise the discovery rule. *See KPMG Peat Marwick*, 988 S.W.2d at 748.

A cause of action for a violation of the DTPA must be brought within two years "after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Tex. Bus. & Com. Code Ann. § 17.565. James did not plead the discovery rule, and she argues it is entirely inapplicable to this case. In her Petition, James alleged that the Defendants made allegedly false or misleading representations to her about their expertise in constructing bulkheads, and that their work on the bulkhead would be long-term but it did not last. We conclude that each of these claims accrued either at the time the representations were made, or upon the completion of the bulkhead in April of 2017, which would have been more than two years prior to James filing suit. Therefore, the DTPA claims are also barred by the applicable two-year statute of limitations.

Common Law Fraud

As for James' common law fraud claim against the Defendants, she alleged in her Petition that the Defendants falsely or recklessly "made misrepresentations of material facts or did affirmatively omit disclosure of facts regarding Defendants'

20

experience with construction, bulkheads, and bulkhead replacement jobs with the intention to induce action or inaction" by James, and she relied on those representations in believing they were qualified to complete the construction to industry standards when they were not. In general, an action for common-law fraud accrues on the date appellant made the allegedly false representations. *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Because all of the allegedly false representations were made either before or no later than the date the work was completed in April of 2017, the limitation period expired on the common law fraud claim more than four years before James filed suit.

The Defendants established as a matter of law that James' claims accrued no later than April of 2017, and that James brought suit against the Defendants on August 19, 2021, which is outside of the applicable four-year statutes of limitations for her breach of contract, breach of warranty, and common law fraud claims, and outside of the applicable two-year statute of limitation for her DTPA claim, and she did not plead the application of the discovery rule for any of her claims, nor did James argue or submit evidence that her legal injury was "inherently undiscoverable." Therefore, the trial court did not err in granting the Defendants' Traditional and No-Evidence Motion for Summary Judgment because as a matter of law the Defendants established the affirmative defense of limitations on all of James'

claims. *See Steel*, 997 S.W.2d at 223; *KPMG Peat Marwick*, 988 S.W.2d at 748. We overrule Appellant's issue.

Defendants' Cross-Appeal on Attorney's Fees

Anchor Boatlifts and Miller argue in one cross issue that the trial court erred in denying Cross-Appellants' claim for attorney's fees. Relying on *Stromberger* and *Bohls*, Cross-Appellants argue that DTPA claims brought after the statute of limitations expired is grounds for finding that a claim is groundless or made in bad faith. *See Stromberger v. Law Offices of Windle Turley*, No. 05-04-00050-CV, 2005 Tex. App. LEXIS 2321, at *6 (Tex. App.—Dallas Mar. 28, 2005, no pet.) (mem. op.); *Bohls v. Oakes*, 75 S.W.3d 473, 480 (Tex. App.—San Antonio 2002, pet. denied). Cross-Appellants also argue that, even if James had pleaded the discovery rule for her DTPA claims, she admitted in her deposition that her neighbor alerted her to potential issues with the bulkhead approximately eighteen months after construction and almost three years before James filed suit, so her DTPA claims were groundless and made in bad faith. Cross-Appellants contend that James also alleged in her Petition that she had incurred costs in repairing the bulkhead when she never made any repairs, and she made unsubstantiated claims for damages under the DTPA. Cross-Appellants contend the trial court should have found that her DTPA claims were groundless and they were brought in bad faith. The Defendants made the same arguments during the bench trial.

22

Cross-Appellee James argues that her claims were not groundless nor brought in bad faith, and the cases cited by Cross-Appellants do not stand for the proposition that a case barred by limitations is groundless.

### Analysis Regarding Cross-Appeal for Attorney's Fees

The Defendants sought reasonable and necessary attorney's fees pursuant to section 17.50(c) of the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code Ann. § 17.50(c). Under that statute, if a trial court finds a DTPA claim was groundless in fact or law, brought in bad faith, or brought for the purpose of harassment, it must award reasonable and necessary attorney's fees and costs. *Id.* Our review of a trial court's determination under section 17.50(c) is a question of law under an abuse of discretion standard. *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 n.3 (Tex. 1989); *see also Selig v. BMW of N. Am., Inc.*, 832 S.W.2d 95, 103-04 (Tex. App.—Houston [14th Dist.] 1992, no writ). Accordingly, we will reverse the determination of the trial court only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam).

Under section 17.50(c) of the Texas Business and Commerce Code, groundless means a claim having "[n]o basis in law or fact and not warranted by

23

[any] good faith argument for the extension, modification, or reversal of existing law." *Donwerth*, 775 S.W.2d at 637. The standard for determining whether a suit is groundless is "whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex. 1989) (citing *Donwerth*, 775 S.W.2d at 519). The court may consider evidence that is legally inadmissible or subject to other defects in making this determination if there is some good faith belief that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence. *Donwerth*, 775 S.W.2d at 637. A suit is brought in "bad faith" if it is motivated by malicious or discriminatory purpose. *Cent. Tex. Hardware, Inc. v. First City, Tex.-Bryan, N.A.*, 810 S.W.2d 234, 237 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Whether a suit is groundless or brought in bad faith is a question of law for the trial court. *Donwerth*, 775 S.W.2d at 637. As the parties claiming attorney's fees under section 17.50(c), the Defendants bear the burden of proving that James' DTPA claims were groundless and brought in bad faith. *See Fichtner v. Richardson*, 708 S.W.2d 479, 482 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (citing *Dairyland Cnty. Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 774 (Tex. 1983)); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991) ("As a general rule, the party seeking to recover attorney's fees carries the burden of proof.").

In granting the directed verdict as to attorney's fees during the bench trial, the trial court stated the following:

> I do not find that the case brought by Ms. Melba was groundless under the relevant . . . standards that were referenced. I don't find it was brought in bad faith and I find that there were reasonable bases to at least pursue a lawsuit.

We agree with James that just because a claim is barred by a statute of limitations does not necessarily mean the trial court abuses its discretion in failing to award fees or find the claim is "groundless" or "brought in bad faith." In *Stromberger*, the Dallas Court of Appeals affirmed the trial court's award of the defendant's attorney's fees under section 17.50(c) in a case where the trial court had granted summary judgment on the plaintiff's DTPA claims based on limitations. 2005 Tex. App. LEXIS 2321, at \*\*5-6. However, in determining that it could not conclude the trial court abused its discretion in concluding the plaintiff's DTPA claims were groundless or brought in bad faith, the Dallas Court of Appeals considered the evidence before the trial court relating to the plaintiff's argument based on the discovery rule and the fact that the plaintiff on appeal did not challenge certain relevant findings of fact by the trial court. *See id.* In *Bohls*, the San Antonio Court of Appeals affirmed the trial court's award of one of the defendant's attorney's fees under section 17.50(c) after the San Antonio Court of Appeals determined that limitations had run by the time that defendant was added to the suit and there was virtually no evidence the defendant was involved in the suit. *See* 75 S.W.3d at 480.

25

A suit barred by the statute of limitations does not automatically amount to a groundless suit or a suit brought in bad faith. *See, e.g.*, *Gaudet v. ICON Custom Home Builder, LLC*, No. 08-23-00075-CV, 2024 Tex. App. LEXIS 6402, at **19-20 (Tex. App.—El Paso Aug. 28, 2024, pet. abated) (mem. op.) (concluding that trial court erred in concluding the plaintiff's suit was groundless because the defendant failed to show facts supporting a claim of groundlessness based on the statute of limitations); *Cal Fed Mortg. Co. v. Street*, 824 S.W.2d 622, 627 (Tex. App.—Austin 1991, writ denied) (declining to hold as a matter of law that a time-barred suit was groundless and brought in bad faith); *see also Phillips Petroleum Co. v. Loucks*, Nos. 93-1381 & 93-1899, 1994 U.S. App. LEXIS 42462, at **15-16 n.13 (5th Cir. 1994) ("We have found no authority for the proposition that simply because a claim is time-barred it is groundless and brought in bad faith [under section 17.50(c)]."); *Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482, 506 (N.D. Tex. 2001) (if the running of statute of limitations is a fact issue for which the plaintiff had an arguable—even if clearly wrong—basis for coming to a different conclusion, then the ruling that the claim was barred by the statute of limitations does not necessarily mean that the claim was groundless); *Arizpe v. Principal Life Ins. Co.*, No. 3:18-CV-1010-G, 2019 U.S. Dist. LEXIS 151971, at *10 (N.D. Tex. Sept. 6, 2019) (concluding the plaintiff's suit was not groundless by virtue of the statute of limitations); *Jacquez v. Compass Bank*, No. EP-15-CV-26-RFC, 2016 U.S. Dist.

26

LEXIS 158813, at **4-5 (W.D. Tex. July 11, 2016) ("The [c]ourt's ruling that [p]laintiff's DTPA claim was barred by limitations does not necessarily mean that the DTPA claim was groundless.").

On this record, we cannot say the trial court acted without reference to any guiding rules and principles, such that the trial court's ruling that James' claims were not groundless or brought in bad faith was arbitrary or unreasonable. *See* Tex. Bus. & Com. Code Ann. § 17.50(c); *Unifund CCR Partners*, 299 S.W.3d at 97. We overrule Cross-Appellants' issue.

Having overruled Appellant's issue on Appeal and Cross-Appellants' issue on cross-appeal, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on July 31, 2025
Opinion Delivered May 7, 2026

Before Johnson, Wright and Chambers, JJ.